STATE OF CONNECTICUT *v.* MICHAEL PIORKOWSKI
(15259)

Peters, C. J., and Borden, Berdon, Norcott and Katz, Js.

---

Argued October 31, 1995—decision released March 19, 1996

*Elizabeth M. Inkster*, assistant public defender, with whom, on the brief, was *Joseph G. Bruckmann*, public defender, for the appellant (defendant).

*Judith M. Rossi*, assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *James Bernardi*, assistant state's attorney, for the appellee (state).

BORDEN, J. The dispositive issue in this certified appeal is whether the defendant's conditional plea of nolo contendere in the trial court, to the crime of murder in violation of General Statutes § 53a-54a (a),[1] presents an appropriate occasion for appellate review of his substantive claims pursuant to Practice Book § 4003 (b).[2]

---

[1] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] Practice Book § 4003 (b) provides: "With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of nolo contendere after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the

The defendant, Michael Piorkowski, appeals[3] from the judgment of the Appellate Court which declined to review his claims regarding the admissibility of certain statements that he had made to the police,[4] and remanded the case to the trial court for further proceedings. *State* v. *Piorkowski*, 37 Conn. App. 252, 656 A.2d 1046 (1995). The defendant contends that the Appellate Court improperly concluded that his claims were not reviewable under General Statutes § 54-94a,[5] Practice Book § 4003 or the appellate supervisory power over the administration of justice. We conclude that the defendant's claims: (1) are not reviewable under General Statutes § 54-94a; and (2) are reviewable under Practice Book § 4003 (b).[6] Accordingly, we reverse the judgment of the Appellate Court.

The following facts and procedural history are undisputed. On October 21, 1992, the defendant was arrested

ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

[3] The defendant initially appealed from the judgment of conviction to this court pursuant to General Statutes § 51-199 (b) (3), and we transferred his appeal to the Appellate Court pursuant to § 51-199 (c). Following the judgment of the Appellate Court, we granted the defendant's petition for certification to appeal pursuant to General Statutes § 51-197f.

[4] We granted the defendant's petition for certification to appeal, limited to the following issue: "In the circumstances of this case, was the defendant entitled to appellate review of the admissibility of his statements?" *State* v. *Piorkowski*, 233 Conn. 909, 652 A.2d 980 (1995).

[5] General Statutes § 54-94a provides: "Conditional nolo contendere plea. Appeal of denial of motion to suppress or dismiss. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[6] This conclusion renders it unnecessary to determine whether the defendant's claims should be reviewed under our appellate supervisory power.

for the murder of Tim Lee. He moved to suppress two statements that he had made to the police, one on October 21, 1992, and the other on October 22, 1992. With respect to the October 21 statement, the defendant asserted in his motion that it was: (1) obtained without a valid waiver of his *Miranda*[7] rights; and (2) a product of a violation of his right to a prompt arraignment under General Statutes §§ 54-1c and 54-1g.[8] With respect to the October 22 statement, the defendant asserted that it was: (1) a fruit of his illegal interrogation on October 21; and (2) independently inadmissible because it was the product of a violation of his right to counsel under article first, § 8, of the Connecticut constitution[9] that had attached at his arraignment on October 21.

Following an evidentiary hearing on the defendant's motion to suppress, the trial court found the following

[7] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[8] General Statutes § 54-1c provides: "Admissibility of confession. Any admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of his rights as provided by section 54-1b or section 54-64b, shall be inadmissible."

General Statutes § 54-1g provides in relevant part: "Time of arraignment. . . . (a) Any arrested person who is not released sooner or who is charged with a family violence crime as defined in section 46b-38a shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed. If an arrested person is hospitalized, or has escaped or is otherwise incapacitated, the person shall be presented, if practicable, to the first regular sitting after return to police custody."

[9] The constitution of Connecticut, article first, § 8, as amended by amendment seventeen to the constitution of Connecticut, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No

facts. After having been arrested by the Norwalk police department on drug charges in early 1992, the defendant became a confidential informant for the Norwalk police, working primarily with Detective James Saraceni. The defendant informed the police that Lee was a marijuana dealer, but in September, 1992, when Saraceni attempted to use the defendant in an investigation of Lee, the defendant told Saraceni that Lee had left town.

On approximately October 10, 1992, Lee's body was discovered in New Jersey. In the early morning of October 20, 1992, Norwalk Detective Robert DeLallo learned that Christine Thompson, a friend of Lee, had given New Jersey police a statement implicating the defendant in Lee's murder. At approximately 7:30 a.m. on October 20, DeLallo and other officers located the defendant in Norwalk and, during a frisk of the defendant for weapons, found drugs and drug paraphernalia on his person. The police arrested the defendant on drug charges, orally advised him of his *Miranda* rights, and brought him to the Norwalk police station at approximately 8 a.m.

The defendant was not presented in court on the drug charges on October 20, but was held in the police department lockup while the police continued to investigate Lee's murder. At approximately 11 p.m., on October 20, the police secured an arrest warrant charging the defendant with Lee's murder. At approximately midnight on October 21, Saraceni and Detective Nelson Alicia awakened the defendant in his lockup cell. The defendant indicated that he wanted to talk with Saraceni, after which the detectives took the defendant to an interview room, where Saraceni informed him that the police had an arrest warrant for the defendant on

person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

a murder charge. Saraceni told the defendant that he would talk to him only after giving him the *Miranda* warnings and having him fill out a waiver of rights form. Saraceni read the waiver of rights form to the defendant, who did not sign the form. Saraceni then interrogated the defendant in Alicia's presence. During the interrogation, the defendant spoke freely, giving a detailed statement implicating himself in Lee's murder.

The detectives concluded their interrogation of the defendant at approximately 2 a.m. on October 21, 1992. Later that day, approximately twenty-six hours after his arrest on the drug charges, the defendant was arraigned in geographical area number twenty of the Superior Court on both the drug and the murder charges; that court had been in session on October 20. A public defender was appointed to represent the defendant on both charges.

At approximately 10:30 p.m. on October 21, DeLallo and Detective Charles Chrzanowski went to the home of Denise Van Valen, with whom the defendant lived, to ascertain whether she had any information regarding the murder of Lee. While they were in Van Valen's home, the defendant called her from the Bridgeport correctional center. Van Valen told the defendant that the detectives were there, and asked him if he wanted to talk to DeLallo. The defendant indicated that he did, and she handed the telephone to DeLallo. When the defendant asked DeLallo to come to the jail to speak to him, DeLallo told the defendant that he would try to see him at the jail the next day. When Van Valen visited the defendant at the jail on October 22, she learned that DeLallo had not yet visited the defendant. Later that day Van Valen called DeLallo and asked him why he had not yet visited the defendant.

Although DeLallo was aware that the defendant was represented by an attorney on the murder charge, no

call was placed to the public defender assigned to the defendant's case. After Van Valen's call to him on October 22, DeLallo spoke to assistant state's attorney James Bernardi and state's attorney's inspector Phil O'Grady, in order to determine whether he could appropriately interview the defendant at the jail. Bernardi and O'Grady advised DeLallo that, if the defendant had initiated the contact with him and had requested to speak with him, it was permissible to interview him regarding the murder charge. Having obtained approval from the state's attorney's office, DeLallo and Alicia visited the defendant at the jail on the evening of October 22. Neither the detectives nor the state's attorney's office informed the defendant's counsel of the detectives' intention to interview the defendant. The detectives read him a *Miranda* rights and waiver form, which he initialed and signed. They then interviewed him about the Lee murder, and he gave another oral statement.

With respect to the defendant's motion to suppress his statements to the police, the trial court concluded that: (1) although the defendant had not signed a waiver of rights form, he had nonetheless knowingly and intelligently waived his *Miranda* rights prior to making a statement on October 21; (2) the defendant had been timely arraigned because §§ 54-1c and 54-1g require only that a suspect be arraigned no later than the day following his arrest;[10] (3) because the defendant had validly waived his *Miranda* rights on October 21, his

---

[10] See *State* v. *Vollhardt*, 157 Conn. 25, 244 A.2d 601 (1968) (intent of statute is not to render inadmissible any confession obtained prior to waiver of rights, but is to ensure that accused is presented; if presentment delayed, then confession is inadmissible); *State* v. *Darwin*, 155 Conn. 124, 230 A.2d 573 (1967) (where accused arrested in early morning of day that court is in session, he need not be presented that day, but may be presented on following day), rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968); *State* v. *Hardy*, 11 Conn. App. 238, 526 A.2d 562 (1987) (where suspect arrested in early morning, presentment is timely if done on day following arrest).

statement that day had not rendered his statement on October 22 invalid; and (4) the defendant's statement on October 22 did not violate his right to counsel under article first, § 8, of the state constitution because our cases do not require that counsel be present when a suspect waives his right to counsel.[11]

Having rejected the defendant's claims for suppression of both his October 21 and October 22 statements, the trial court denied the defendant's motion to suppress. Thereafter, the state and the defendant appeared before the trial court, and the defendant entered a conditional plea of nolo contendere to the charge of murder pursuant to § 54-94a. See footnote 5. Both the state and the defendant urged the trial court to accept the conditional plea. The state and the defendant shared certain common understandings: (1) the defendant's plea was being entered pursuant to § 54-94a, and would be reviewed by this court pursuant either to that statute or to our supervisory power, as articulated in *State* v. *Kelley*, 206 Conn. 323, 335–36, 537 A.2d 483 (1988), and *State* v. *Chung*, 202 Conn. 39, 44, 519 A.2d 1175 (1987); (2) the record was adequate for appellate review of the suppression issues that the defendant intended to raise on appeal; (3) all of the defendant's claims concerned his statements given on October 21 and 22, 1992; (4) the defendant's claims could otherwise only be tested

---

[11] The defendant urged the trial court to follow the rationale of the New York Court of Appeals in *People* v. *Settles*, 46 N.Y.2d 154, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978). In that case, the New York court held that, under the New York constitution, any waiver of the postindictment right to counsel must itself be in the presence of counsel. Id., 162–63. The trial court, however, concluded, based on this court's language in *State* v. *Jones*, 205 Conn. 638, 654–55 n.11, 534 A.2d 1199 (1987) (rejecting claim for heightened requirement for waiver of counsel), that we would not adopt the *Settles* standard nor the standard adopted by the Second Circuit Court of Appeals in *United States* v. *Mohabir*, 624 F.2d 1140 (2d Cir. 1980) (in addition to being given *Miranda* warnings, accused should be informed that he has been indicted before postindictment waiver is sought). Accordingly, the court rejected the defendant's state constitutional right to counsel claim.

by a full trial, which would be burdensome because, Lee's body having been discovered in New Jersey, the state intended to call many out-of-state witnesses; and (5) because the defendant would be challenging two confessions, if he were successful on appeal with respect to either confession, the reviewing court would remand the case to the trial court for further proceedings, rather than determine whether the admissibility of one of the confessions rendered the inadmissibility of the other confession harmless.[12]

Following this recitation of understandings and expectations, the trial court expressed some reservation regarding whether § 54-94a, which requires that the statement sought to be suppressed have been involuntary; see footnote 5; encompassed the defendant's conditional plea and appeal in this case. Nonetheless, the court canvassed the defendant, he entered his conditional plea, and the court accepted the plea. Thereafter, the court sentenced the defendant, and he took an appeal to this court. We transferred the defendant's appeal to the Appellate Court.

In his brief to the Appellate Court, the defendant claimed that: (1) his October 21 statement was inadmissible because it had been elicited in violation of § 54-1c; see footnote 8; and (2) his October 22 statement was inadmissible because it had been elicited in violation of his right to counsel under article first, § 8, of the Connecticut constitution. See footnote 9. In its brief, the state questioned whether any appellate court had subject matter jurisdiction to consider the defendant's appeal. The state argued that the defendant's appeal did not come within the purview of General Statutes § 54-94a, and questioned whether Practice Book § 4003 supplied a proper subject matter jurisdictional basis for

---

[12] The state and the defendant also agreed that the defendant would be sentenced to thirty years incarceration.

the appeal. The state suggested that, if § 54-94a is a subject matter jurisdictional statute, a reviewing court does not have the power to exercise its supervisory power beyond the confines of that statute. The state argued, in the alternative, that, if § 54-94a is not a subject matter jurisdictional statute that limits the court's supervisory power, nonetheless the court should not exercise that power in this case.[13]

In his reply brief to the Appellate Court, the defendant argued that the appeal was properly before the court. He contended that: (1) § 54-94a does encompass his conditional plea in this case; (2) § 4003 does not conflict with § 54-94a; and (3) the appeal presented an appropriate occasion for the exercise of the court's inherent supervisory power.

The Appellate Court rejected the state's subject matter jurisdictional claims. The court concluded that neither § 54-94a nor § 4003 involved subject matter jurisdiction. The court also concluded, however, that the appeal did not come within the confines of § 54-94a because on appeal the defendant was not challenging the voluntariness of his statements. *State* v. *Piorkowski*, supra, 37 Conn. App. 261. The court concluded further that the appeal did not meet the requirements of § 4003 (b) because of the condition imposed on the appeal, namely, that if the defendant prevailed regarding *either* statement, his appeal was not within the meaning of "prevail" in § 4003 (b). Id., 263. Finally, the court concluded that the appeal did not present an appropriate occasion for the exercise of the court's supervisory power because to do so would circumvent the limitations of both § 54-94a and § 4003. Id., 265. The court, therefore, declined to address the merits of the defendant's appeal. Recognizing, however, that the

[13] The state also addressed the merits of the defendant's claims regarding the propriety of the trial court's ruling on his motion to suppress.

defendant's plea had been entered on the express condition that he would secure appellate review of the trial court's ruling on his motion to suppress, the Appellate Court reversed the judgment of the trial court and remanded the case for further proceedings. Id., 266 n.15. This certified appeal followed.

We note at the outset that the defendant did not challenge in the Appellate Court the ruling of the trial court that his October 21 statement had not been elicited in violation of his *Miranda* rights. Thus, to the extent that *Miranda* acts as a prophylaxis against police coercion of statements by defendants, that issue is not involved in the defendant's appeal. The defendant's sole basis for challenging the admissibility of that statement is statutory, namely, that the prompt arraignment provisions of §§ 54-1c and 54-1g rendered that statement inadmissible. With respect to the defendant's October 22 statement, moreover, the sole basis for the defendant's appellate challenge to the trial court's ruling is that it had been elicited in violation of his state constitutional right to counsel. In this connection, the gist of the defendant's argument is that, as a matter of state constitutional law, the court should adopt the principle, articulated by the New York Court of Appeals in *People* v. *Settles*, 46 N.Y.2d 154, 162–63, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978), that a postinformation waiver of the right to counsel may occur only in the presence of counsel. With this background in mind, we turn to the specific issues of appellate reviewability raised by this case.

I

The defendant first contends that his claims are reviewable pursuant to § 54-94a. Specifically, the defendant argues that § 54-94a is not subject matter jurisdictional, and that his claims fall within the mean-

ing of the phrase, "involuntariness of a statement," as used in that statute.

The state disagrees with the defendant's statutory interpretation. Specifically, the state argues that the statute involves subject matter jurisdiction because it embodies the final judgment rule, and that the defendant's condition of appeal—that if he prevails with regard to either statement the case must be remanded to the trial court—violates that rule because it permits piece-meal litigation. With respect to the language of § 54-94a, the state argues that, although the defendant's original, *Miranda*-based challenge in the trial court to the admissibility of his October 21 statement would have qualified as a challenge to the "voluntariness" of that statement, he did not renew that challenge on appeal, and neither his statutory claim nor his right to counsel claim involves a challenge to the "voluntariness" of either his October 21 or his October 22 statement.

We agree with the defendant and the Appellate Court that § 54-94a is not a subject matter jurisdictional statute. We also agree with the state, however, that neither the defendant's challenge to his October 21 statement, which is based on §§ 54-1c and 54-1g, nor his challenge to his October 22 statement, which is based on his state constitutional right to counsel, comes within the terms of § 54-94a, because neither challenge involves the "voluntariness" of the statement.

A

We first address the state's contention that § 54-94a is subject matter jurisdictional. The state argues that § 54-94a embodies the final judgment rule, namely, that, absent specific statutory exceptions, a final trial court judgment is a prerequisite to appellate subject matter jurisdiction. *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 447, 645 A.2d 978 (1994). In support of its position, the state relies

on the fact that the parties purported to attach a condition to the defendant's plea of nolo contendere, namely, that if he were only partially successful on appeal—if he were successful in suppressing only one of his statements—the case would nonetheless be remanded for further trial court proceedings. In the state's view, this "unique contingency attached to the defendant's plea render[ed] the appeal interlocutory," because by gaining suppression of one confession, "he would obtain the opportunity to go to trial against what he might consider a relatively weaker state's case." We disagree.

We believe that the Appellate Court correctly analyzed the function of § 54-94a. "The power to hear appeals in criminal cases is conferred by General Statutes § 54-95.[14] Pursuant to § 54-95, appellate criminal jurisdiction lies where there is an appeal from a final judgment. The thirty year sentence that was imposed on the defendant here constituted a final judgment. *State* v. *Ayala*, 222 Conn. 331, 339, 610 A.2d 1162 (1992); *State* v. *Jackson*, 32 Conn. App. 724, 731, 630 A.2d 164, cert. denied, 228 Conn. 903, 634 A.2d 297 (1993). This court is competent to entertain this action because appellate courts routinely review appeals that challenge trial courts' denials of motions to suppress statements.

"When viewed in light of the definition of subject matter jurisdiction and the statutes that create such jurisdiction, it becomes clear that § 54-94a neither confers nor curtails appellate subject matter jurisdiction. What § 54-94a does is abrogate, in certain circumstances, the waiver of constitutional rights that is implicit in a guilty or nolo contendere plea. As a general rule, an unconditional plea of guilty . . . intelligently and voluntarily made, operates as a waiver of all nonju-

---

[14] General Statutes § 54-95 provides in pertinent part: "(a) Any defendant in a criminal prosecution, aggrieved by any decision of the superior court, upon the trial thereof . . . may be relieved by appeal . . . ."

risdictional defects . . . . *State* v. *Niblack*, 220 Conn. 270, 276, 596 A.2d 407 (1991); see also *Parker* v. *Commissioner of Correction*, 27 Conn. App. 675, 683–84, 610 A.2d 1305, cert. denied, 223 Conn. 909, 612 A.2d 57 (1992), citing *Tollett* v. *Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973). Section 54-94a clearly states its purpose in its concluding sentence: A plea of nolo contendere by a defendant under this section shall *not* constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. (Emphasis added.) In referring to § 54-94a, our Supreme Court has said: The legislature in 1982 *altered* the broad waiver of constitutional rights implicit in a plea of guilty or nolo contendere . . . . (Emphasis added.) *State* v. *Madera*, 198 Conn. 92, 98, 503 A.2d 136 (1985); see also *State* v. *Gilnite*, 202 Conn. 369, 374–75, 521 A.2d 547 (1987).

"In enacting § 54-94a, the legislature created a new, expedited route to the appellate courts but it did not create a new jurisdictional doorway into those courts. Section 54-94a is intended to promote judicial economy by allowing the parties to litigate a suppression or dismissal issue fully in the trial court, and thereafter allowing the defendant to obtain review of an adverse ruling without the parties' or the court's expending additional resources." (Internal quotation marks omitted.) *State* v. *Piorkowski*, supra, 37 Conn. App. 259.

The fact that there may be further trial court proceedings if the defendant prevails on appeal only partially, rather than completely, does not, contrary to the state's position, strip the judgment of conviction of the requisite finality. Section 54-94a contemplates that there may be suppression issues that result in only partial appellate success, and there is nothing in either the language or the purpose of the statute that suggests otherwise. The denial of a motion to suppress based on a claim of an unreasonable search and seizure might well yield

an appellate result suppressing part, but not all, of the evidence gathered as a result of the search. In that event, the appellate decision would not necessarily end the case, and the case would have to be remanded for further proceedings.[15]

## B

We next consider the defendant's contention that both his October 21 statement and his October 22 statement are reviewable under § 54-94a. Because the legal bases for the challenges to the two statements differ, we discuss the reviewability of each statement separately. We conclude that neither statement is reviewable under § 54-94a. We focus first on the October 21 statement.

As originally enacted in 1982, § 54-94a was limited to appellate review of the trial court's "denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss." General Statutes (Rev. to 1983) § 54-94a.[16] In 1988, the

[15] For example, with respect to evidence gathered as a result of a warrantless search incident to a lawful arrest, an appellate court might decide that the evidence within the defendant's "wingspan" was admissible, but that other evidence gathered in a contemporaneous search of his home was suppressible. In that event, under § 54-94a the appellate court would order the judgment of the trial court, based upon the defendant's conditional nolo contendere plea, reversed, and the case remanded for further proceedings. On remand, both the state and the defendant would then have to reevaluate their respective positions in light of the availability of some, but not all, of the evidence gathered as a result of the search.

[16] General Statutes (Rev. to 1983) § 54-94a provides: "Conditional nolo contendere plea. Appeal of denial of motion to suppress or dismiss. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

legislature amended the statute to add the language that is at issue in this case, namely, the provision for appellate review of the trial court's denial of the defendant's "motion to suppress statements and evidence based on the involuntariness of a statement." Public Acts 1988, No. 88-19; General Statutes § 54-94a. See footnote 5. Whether the defendant's trial court challenge to his October 21 statement qualifies as a "motion to suppress . . . based on the involuntariness of a statement" presents a question of statutory interpretation.

"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . . *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991)"; (internal quotation marks omitted) *State* v. *McVeigh*, 224 Conn. 593, 607, 620 A.2d 133 (1993); and to the jurisprudential background of the statute. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 164, 659 A.2d 138 (1995). This analytical process leads us to conclude that "involuntariness," as used in § 54-94a, does not include the defendant's challenge to his October 21 statement.

In the jurisprudence of statements made to the police by persons accused of crime, traditionally there are two types of "voluntariness" inquiries. One, dating from before *Miranda* and emanating from principles of due process, involves essentially whether the defendant's will was overborne by the police in eliciting the statement. See, e.g., *Arizona* v. *Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); *Colorado* v. *Spring*, 479 U.S. 564, 107 S. Ct. 851, 93 L. Ed. 2d 954

(1987); *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Lynumn* v. *Illinois*, 372 U.S. 528, 83 S. Ct. 917, 9 L. Ed. 2d 922 (1963). The other, deriving from *Miranda*, involves essentially whether, when the police interrogate a suspect who is in their custody, they properly administer the *Miranda* warnings to him and he waives the rights about which he was warned. See, e.g., *Powell* v. *Nevada*, 511 U.S. 79, 114 S. Ct. 1280, 128 L. Ed. 2d 1 (1994); *Colorado* v. *Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *Moran* v. *Burbine*, 475 U.S. 412, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Fare* v. *Michael C.*, 442 U.S. 707, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979). Although *Miranda* is not itself a constitutional command; *Miranda* v. *Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); it is nonetheless a judicially created prophylactic rule designed to safeguard the defendant's fifth amendment right to remain silent because of the inherently coercive quality of custodial interrogation. *Withrow* v. *Williams*, 507 U.S. 680, 691–92, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993), cert. denied, 510 U.S. 1073, 114 S. Ct. 882, 127 L. Ed. 2d 77 (1994).

In Connecticut, a statutory prompt arraignment scheme governs the admissibility of statements given by defendants who have not been arraigned within certain time constraints defined by that scheme. Section 54-1c provides that "[a]ny admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of his rights as provided by section 54-1b or section 54-64b,[17] shall be inadmissible." Section 54-1g

---

[17] Both General Statutes §§ 54-1b and 54-64b require certain warnings to be given to criminal accuseds. Section 54-1b requires all accuseds to be given those warnings by the judge in court, and § 54-64b requires the clerk

(a) provides in pertinent part that "[a]ny arrested person who is not released sooner . . . shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed."

The word "involuntary," in either of its specialized legal meanings as applied to statements given by criminal defendants, or in any of its normal usages in the English language; see Webster's Third New International Dictionary (e.g., common meaning of involuntary is "not subject to the control of the will"); does not include the defendant's purely statutory challenge to his October 21 statement, based on the prompt arraignment provisions of §§ 54-1c and 54-1g. It would stretch the word beyond reason to conclude otherwise. The prompt arraignment provisions of these statutes have nothing to do with the notion of voluntariness. Those provisions apply irrespective of whether the police have given the *Miranda* warnings, and irrespective of whether the statement at issue was in fact voluntary or involuntary. Those statutory provisions by their terms set forth a rule of inadmissibility that depends solely on the timing of the statement in relation to the sessions of court defined by the statutes.

Furthermore, the legislative history of Public Acts 1988, No. 88-19 (P.A. 88-19) demonstrates that the legislature intended the term "involuntariness" in § 54-94a to encompass the two types of voluntariness issues indicated previously, namely, whether (1) the police had complied with the prophylactic requirements of *Miranda*, and (2) the police had elicited the statement from the defendant by overcoming his will, irrespective of whether they had complied with *Miranda*. The testimony at the public hearing before the Joint Standing

of the court to give those warnings under circumstances contemplated by that statute. Neither of those statutes is involved in this case.

Committee on the Judiciary on Raised Committee Bill 5084, which became P.A. 88-19, indicated a need to broaden the scope of § 54-94a to include cases in which the voluntariness of a confession was at issue. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., pp. 272–73. The legislature acted because this court, in cases such as *State* v. *Chung*, supra, 202 Conn. 39, and *State* v. *Madera*, supra, 198 Conn. 92, had pointed out that § 54-94a, as it then existed, did not cover those cases.[18] In *State* v. *Chung*, supra, 44–45, we pointed out that § 54-94a, which was then limited to permitting appellate review of trial court rulings on motions to suppress based on claims of an illegal search and seizure, and on motions to dismiss, did not cover the defendant's conditional plea in that case.[19] That plea had followed the trial court's ruling rejecting the defendant's claim that "his confession was made without a voluntary, knowing and intelligent waiver of his right against self-incrimination"; id., 45; as protected

---

[18] Attorney Brian Kornbrath testified before the judiciary committee as follows: "There are a number of situations in the past that have come up before the Connecticut Supreme Court regarding whether or not a defendant can forego his right to a trial if there is only one issue, that being whether or not a statement is voluntary.

"In one case in particular, *State* v. *Madera*, [supra, 198 Conn. 52] the Supreme Court held that because the actual statement that he was requesting to be suppressed was not covered under the specific nolo contendere statute the Supreme Court would not review his claim. This also came up in *State* v. *Chung*, [supra, 202 Conn. 39] a more recent case. We're asking that the committee pass this resolution because there are a number of cases where the voluntariness of the statement based on both the fifth amendment and sixth amendment privileges under the United States constitution and article first, § 8, of the Connecticut constitution is the only issue.

"The basis for this claim obviously is judicial economy. It would save a lot of time and effort if a defendant could forego his jury trial which would take a matter of weeks, obviously, and proceed right to the appellate level based on the one issue, the voluntariness of the statement." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., pp. 272–73.

[19] Nonetheless, in *State* v. *Chung*, supra, 202 Conn. 44–45, we exercised our inherent supervisory power over the administration of justice to review the defendant's claims.

under the fifth amendment to the federal constitution by *Miranda*. Id., 45 n.7.[20] Similarly, in *State* v. *Madera*, supra, 96, the defendant had sought review under then § 54-94a of the trial court's ruling rejecting his claims that (1) he had not effectively waived his *Miranda* rights, and (2) his confession was not voluntary. We refused to consider the defendant's appeal from that ruling because it did not comply with the terms of § 54-94a. Id., 99. The balance of the legislative history of the 1988 amendment is also consistent with the conclusion that the question of the voluntariness of a confession is limited to whether (1) there had been compliance with *Miranda*, and (2) the defendant's will had been overborne, irrespective of compliance with *Miranda*, and is inconsistent with the defendant's claim based on the prompt arraignment statutes. See 31 S. Proc., Pt. 2, 1988 Sess., pp. 519–22; 31 H.R. Proc., Pt. 2, 1988 Sess., pp. 535–39.

Finally, in construing the term "involuntariness" as used in § 54-94a we must keep in mind its likely intended audience. "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting

---

[20] We noted in *State* v. *Chung*, supra, 202 Conn. 45 n.7 as follows: "The defendant makes his claim under both the federal and state constitutions. We have held: Although the *Miranda* warnings were originally effective in state prosecutions only because they were a component of due process of law under the fourteenth amendment; *Miranda* v. *Arizona*, [supra, 384 U.S. 463–65]; *Malloy* v. *Hogan*, 378 U.S. 1, 3, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); they have also come to have independent significance under our state constitution. Conn. Const., art. I, § 8; *State* v. *Falby*, 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982). *State* v. *Ferrell*, 191 Conn. 37, 40–41, 463 A.2d 573 (1983). The defendant, however, has proffered no argument that the rights afforded to him by the federal and state constitutions are in any way distinguishable with respect to the substantive issue that he has raised. We see no reason, on the facts of this case, independently to undertake such an analysis. *State* v. *Braxton*, 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985). *State* v. *Toste*, 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986)." (Internal quotation marks omitted.)

in which they are used, of which the relation between the speaker and the hearer is perhaps the most important part." *National Labor Relations Board* v. *Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941). Section 54-94a is a statute intended for the ears and eyes of criminal lawyers—both prosecution and defense—and of judges, particularly appellate judges, who preside over criminal proceedings. That circumstance reinforces the conclusion that, when the legislature used the phrase "involuntariness of a statement," and thereby added that set of cases to those that could be appealed by way of a conditional nolo contendere plea, the legislature intended the phrase to mean what those lawyers and judges would most naturally think it means, namely, what its meaning has long been in the law of confessions. Moreover, that meaning has never included the rule of inadmissibility created by the failure of the state to comply with the prompt arraignment statutes.

For the same reasons, we also conclude that § 54-94a does not include the defendant's challenge to his October 22 statement. Although we have held that *Miranda* has independent significance under our state constitution; *State* v. *Ferrell*, 191 Conn. 37, 40–41, 463 A.2d 573 (1983); and although a factually involuntary confession is inadmissible under our state constitution; id., 45; the basis of the defendant's challenge is not that his statement was involuntary in either the *Miranda* sense or the factual sense. The basis of the defendant's challenge is that, as a matter of state constitutional law, he may not be held to have waived his right to counsel, postinformation, without his counsel's presence. That proposition does not depend on whether *Miranda*-type warnings had been properly administered, or on whether the statement that the defendant gave pursuant to the waiver that he challenges was factually voluntary. The defendant's proposition has nothing to do with voluntariness, as that term has long been understood.

Thus, it does not fall within the meaning of "involuntariness of a statement" as that phrase is used in § 54-94a.[21]

In this connection, the defendant relies on two isolated comments in the 1988 legislative history for his assertion that the statutory phrase was intended to include cases in which the challenge to the statement was based on the constitutional right to counsel. The first is the reference in Attorney Brian Kornbrath's testimony before the judiciary committee; see footnote 18; to "cases where the voluntariness of the statement based on both the fifth amendment *and sixth amendment privileges under the United States constitution[22] and article first, § 8, of the Connecticut constitution is the only issue*." (Emphasis added.) Conn. Joint Standing Committee Hearings, supra, p. 272. The defendant argues that the references to the sixth amendment to the federal constitution and to article first, § 8, of the state constitution, both of which contain right to counsel provisions, among other provisions, indicate a legislative intent to include right to counsel challenges within the meaning of § 54-94a. The second comment on which the defendant relies is an exchange on the floor of the Senate between Senator Thomas F. Upson

[21] We acknowledge, as the state concedes, that, in a case involving a claim of factual involuntariness, whether the defendant had counsel at the time, or whether he had sought and been denied the opportunity to contact counsel, would be relevant considerations in determining whether his statement was voluntary. That factual relevance does not, however, transform a claim that a statement was either involuntarily based or *Miranda* based, into a right to counsel claim or vice versa. The two are simply factually and analytically different.

[22] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

and Senator Anthony V. Avallone.[23] We are not persuaded, because these two references in the legislative history constitute too slender a reed to overcome the more persuasive considerations that we have outlined previously.

With regard to Kornbrath's statement, we note first that there is no indication that he was speaking as a

[23] "Senator Avallone . . . Currently when someone pleads nolo contendere, that is they are saying to the court I do not wish to contest what the State is saying. It is a finding of guilty, but it is not a plea of guilty. If someone wishes to take advantage . . . if someone has been arrested, questioned of the fact the warrant was defective or the affidavits were defective in some way and they wish to plead nolo contendere, they cannot under the current law take appeal based on the defects in the warrant.

"They would have to have a trial and then attack the defects in the warrant. This bill would allow people to go in, plead nolo contendere, which is a finding of guilt, but then would allow them to make their appellate process based on the perceived or alleged flaws in the warrant. . . .

"Senator Upson . . . [I]f I may ask Senator Avallone some questions. First of all this would only apply where there is [a] warrant that was improperly, where there is a question of the improper evidence in it, is that correct? . . .

"Senator Avallone . . . It is my understanding that is correct.

"Senator Upson . . . [D]o you think this will be abused? If someone doesn't like the judge that is sitting in front of him or used improperly by the defense counsel? . . .

"Senator Avallone . . . I don't believe so because it is a finding of guilt and this is not something, nolo contendere is not something which is dealt with very lightly. This is a finding. It is a final finding. It allows the appeal process to go forward, so I doubt very much that any attorney will abuse this.

"Senator Upson . . . The reason I ask that, there was some debate in the House that this is a defendant's bill and they would resolve with more judge shopping and abuse the process. I believe . . . there is only one attorney who testified in favor of this, is that correct? . . .

"Senator Avallone . . . I don't know how many people. I don't have the file in front of me as to how many provided testimony. But it's certainly possible. . . .

"Senator Upson . . . I guess my last question. This would not apply to any other case except a pre-trial motion to suppress evidence based on an involuntary statement, is that correct? . . .

"Senator Avallone . . . I'm not sure when you talk about, Senator Upson, an involuntary statement. It certainly is the example that was given to us. I'm trying to think if there would be any other motions to suppress evidence other than an involuntary statement. Off the top of my head I would think so, so I don't believe you would be limiting it to just that." 31 S. Proc., Pt. 2, 1988 Sess., pp. 519–22.

sponsor of the raised committee bill at issue. We note also that, at no time, did he specifically mention the right to counsel. Thus, the legislators at the hearing would have had to divine from his passing references to the sixth amendment to the federal constitution and article first, § 8, of the state constitution that he was speaking about the right to counsel, rather than what the term "voluntary" ordinarily means in the context of a confession, and rather than the other subjects covered by the sixth amendment and article first, § 8. Furthermore, his reference to article first, § 8, is more consistent with the conclusion that we have reached than with the defendant's argument, because article first, § 8, contains not only our right to counsel provision, but also our state counterpart to the federal fifth amendment right against compulsory self-incrimination, the source of traditional voluntariness inquiries. Indeed, in *State* v. *Chung*, supra, 202 Conn. 45 n.7, which was one of the cases that prompted the 1988 amendment to § 54-94a, we specifically referred to article first, § 8, as that counterpart. See footnote 20.

The exchange between Senators Upson and Avallone is also unconvincing. Unlike other examples of exchanges on the floor of the Senate, this exchange does not have the hallmarks of a colloquy designed to indicate a legislative intent behind statutory language. In response to Senator Upson's question, Senator Avallone responded that the question of the voluntariness of a statement "is the example that was given to us." 31 S. Proc., Pt. 2, 1988 Sess., p. 522. That response is consistent with the language of the bill before the Senate, and with the testimony before the judiciary committee. That response, moreover, supports our reading of § 54-94a, and does not support the defendant's argument. The balance of Senator Avallone's uncertain response, on which the defendant relies, is inconsistent, however, with the language of the bill and was given

"[o]ff the top of [his] head." Id. That is not the kind of response on which we should rely to overcome legislative language, context and jurisprudential background to the contrary.

## II

We next consider the defendant's contention that the trial court's ruling on his motion to suppress is reviewable under Practice Book § 4003. The defendant appears to make a generalized claim under § 4003, without focusing closely on either particular subsection thereof. Because the defendant specifically mentions only subsection (b) of § 4003; see footnote 2; however, we agree with the state that the defendant's claim rests on that subsection, rather than on subsection (a). We nonetheless discuss both subsections, however, because a proper understanding of subsection (b) depends upon an understanding of its relationship to subsection (a).

The state responds that § 4003 (a)[24] does not expand the scope of § 54-94a, but simply implements that statute and, therefore, if the defendant's plea fails under

---

[24] Practice Book § 4003 (a) provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof."

the statute it also fails under § 4003. With respect to § 4003 (b), the state presents a two part argument.

First, the state contends that subsection (b) does not apply to pretrial motions, because that would render subsection (a) superfluous. Second, the state argues that, even if subsection (b) were to apply to pretrial motions, that does not help the defendant in this case because the rule requires the trial court to accept a plea under that subsection "where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court." Practice Book § 4003 (b). In the state's view, "significant impact" means fully dispositive. Relying on federal authority under rule 11 (a) of the Federal Rules of Criminal Procedure,[25] to which Practice Book § 4003 (b) is analogous, the state contends that "[t]he final judgment rule, the policy against piecemeal litigation and the potential for abuse of the conditional plea procedure [require] that conditional pleas be allowed only when the decision of the [reviewing] court . . . will dispose of the case either by allowing the [conviction] to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence. [Citations omitted; internal quotation marks omitted.] *United States* v. *Wong Ching Hing*, 867 F.2d 754, 758 (2d Cir. 1989)." Thus, the state argues, the Appellate Court properly determined that the defendant's reservation of the right to withdraw his plea if he were only partially, rather than completely, successful on appeal—if he prevailed in suppressing either of his statements—disqualifies his appeal from consideration under § 4003 (b).

---

[25] Rule 11 (a) of the Federal Rules of Criminal Procedure provides in relevant part: "(2) Conditional pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea." 97 F.R.D. 245, 278 (1983).

We acknowledge the strength of the state's contentions. Indeed, we agree with the state that § 4003 (a) does not go beyond § 54-94a, but merely implements it. Moreover, the state's readings of the relationship between subsections (a) and (b), and of the confines of subsection (b), are plausible, and find support in both the language and the background of § 4003. We conclude, nonetheless, that the two subsections involve separate, albeit overlapping, procedural circumstances and that, under the circumstances of this case, the trial court's ruling is properly reviewable under § 4003 (b) with respect to both the October 21 and the October 22 statements.

A

We agree with the state that § 4003 (a) implements, but does not conflict with, § 54-94a. The first three sentences of the rule track the language of the statute, with one exception. That exception is that the rule mirrors the statute as originally adopted, without the 1988 amendment regarding involuntary statements. Thus, the rule has not yet been amended to reflect that statutory amendment. The only other differences between the statute and the rule lie in the final two sentences of the rule: "The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof." Practice Book § 4003 (a). These two limitations on the trial court's discretion in accepting a conditional plea of nolo contendere are aimed at conserving judicial resources on both the trial and the appellate levels. As such, although the final two sentences of § 4003 (a) impose limitations that the statute

does not specifically contain, they support, rather than contravene, the principal purpose of the statute, namely, the conservation of judicial resources.

Therefore, the defendant's appeal does not come within the purview of § 4003 (a), because the rule as currently phrased does not contemplate immediate appellate review of a ruling on a motion regarding the admissibility of either of the defendant's two statements. The rule, designed to implement the statute, is more limited than the statute, and cannot be read to expand it. We turn, therefore, to a consideration of § 4003 (b).

## B

Although we have on occasion referred in passing to § 4003 since its adoption in 1986; see *State* v. *Kelley*, supra, 206 Conn. 336; *State* v. *Gilnite*, supra, 202 Conn. 376–77 n.6; *State* v. *Chung*, supra, 202 Conn. 44 n.5; we have never explored the relationship between its two subsections. The state argues that pretrial motions, like those ruled upon in this case, are governed solely by subsection (a) and, therefore, the defendant's plea does not fall within subsection (b). The state contends that subsection (b) "must be construed to apply to motions *other than* pre-trial motions. Construing § 4003 (b) to allow appeals from the denial of any pre-trial motion would effectively write the express limitations out of § 54-94a and § 4003 (a) and render them superfluous." (Emphasis in original.) Although the specific reference in § 4003 (a) to the defendant's conditional plea "prior to the commencement of trial" lends support to the state's contention, two considerations lead us to conclude that § 4003 (b) does contemplate pretrial, as well as midtrial, conditional pleas.

First, § 4003 (b) specifically applies "to review of the adverse determination of *any motion made prior to the close of evidence.*" (Emphasis added.) The broad

sweep of this language includes pretrial motions. This broad sweep, read together with the more limited language of subsection (a), suggests that subsection (b) was intended to expand upon the policy expressed in subsection (a), and to permit a conditional plea and ensuing appeal in instances that go beyond, but might also include, those specified in subsection (a), subject, however, to the limitations of subsection (b). Second, there may well be instances in which a defendant files a pretrial motion to suppress or dismiss that would have come within the purview of § 4003 (a) had the court ruled on it before the commencement of trial; the court may, however, choose to defer ruling on the motion until after the commencement of trial. If the court then were to deny the motion, and the defendant were to seek to enter a conditional plea under § 4003 (b), we see no reason to disqualify such a plea from the purview of that subsection, provided, of course, that all the other requirements of the subsection were met.

Thus, it is not necessarily true that, as the state suggests, all pretrial conditional pleas must comply with subsection (a) in order to be reviewable on appeal without the necessity of a full trial. Nor is it necessarily true that this reading of the two subsections would render the limitations of subsection (a) superfluous, although there may well be instances in which the two subsections overlap.

We are persuaded, instead, that in general the relationship between the two subsections is as follows. If, before the commencement of trial, the trial court denies a motion to suppress based upon an unreasonable search or seizure, or the court denies a motion to dismiss, the provisions of subsection (a) apply. Subsection (a), in contrast to subsection (b), has no provision requiring the approval of the court as a condition of the defendant's entry of a conditional plea. Under subsection (a), therefore, the defendant may, prior to the

commencement of the trial, enter a conditional plea, and thereby gain appellate review of the trial court's ruling, if the defendant persuades the trial court that the ruling would have a significant impact on the disposition of the case, and that there is an adequate record for appellate review.[26] Beyond these two requirements, the trial court's approval is not required under subsection (a).

If, at any time before the close of evidence—in short, either before or after the commencement of trial—the court denies any motion of the defendant, including but not limited to a motion specified in subsection (a), the provisions of subsection (b) come into play. In that instance, in order for the defendant to secure appellate review of the ruling without going through a full trial, the following requirements apply: (1) the defendant must reserve "in writing the right, on appeal from the judgment, to review of the adverse determination" made by the trial court; (2) the "motion [that yielded the adverse determination] must be specified in such written reservation"; (3) the trial court must give its approval; (4) the ruling must have had a significant impact on the disposition of the case; and (5) there must be an adequate record for appellate review. Practice Book § 4003 (b).

The final three requirements, particularly the necessity of the trial court's approval, make the trial court a gatekeeper against abuse of the conditional plea process. The need for such a gatekeeping process was

[26] Prior to the adoption of § 4003, we had noted that, under § 54-94a, the trial court had "the general authority . . . to refuse to accept such a [conditional] plea where it [was] inappropriate . . . ." *State* v. *Madera*, supra, 198 Conn. 102 n.10. Under § 4003 (a), this general authority has now been codified in the form of the two limitations on the trial court's discretion, namely, that the ruling would have a significant impact on the disposition of the case, and that there is an adequate record for appellate review.

noted in our discussion, before the adoption of § 4003, in *State* v. *Madera,* supra, 198 Conn. 102, in which we stated: "We also are of the view that until a rule has been fashioned containing safeguards similar to those embodied in federal rule 11 (a) (2) [against abuse of the appellate process by indiscriminate use of conditional pleas], the trial courts should not employ this procedural innovation except in situations plainly within the provisions of § 54-94a." The following year, § 4003 was adopted, and contains within it the safeguards the need for which we noted in *Madera.*

We are not persuaded, moreover, by the state's argument that, in order for a trial court ruling to qualify under subsection (b) of § 4003, the ruling must be fully dispositive and that, therefore, the possibility of partial, rather than complete, success on appeal by the defendant disqualifies the defendant's appeal. First, as we indicated in discussing § 54-94a, there is often the possibility of only partial appellate success stemming from review of trial court rulings on motions to suppress and the like.

Second, the federal authority upon which the state relies is not apposite to § 4003 (b). It is true that § 4003 (b) is patterned after rule 11 (a) (2) of the Federal Rules of Criminal Procedure; see footnotes 2 and 25; which, according to the advisory committee note to the federal rule, contemplates only case dispositive rulings: "[C]onditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing additional evidence." 97 F.R.D. 282 (1983). It is also true that we have, prior to the adoption of § 4003, articulated the same concern. See *State* v. *Madera,* supra, 198 Conn. 101 (use of conditional plea should be "carefully limited to significant issues the determination of which on appeal is likely to be dispositive of the case"). We

conclude, nonetheless, that § 4003 (b) does not contain such a stringent requirement. The use of the phrase "where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court"; Practice Book § 4003 (b); rather than more case dispositive language, convinces us that the standard is looser than the state suggests. This is particularly true in light of the fact that this language was employed when the rule was adopted in 1986, after the more stringent, case dispositive standard was suggested by this court in *State* v. *Madera*, supra, 101.

## C

Having concluded that the defendant's conditional plea could qualify under § 4003 (b), we next consider whether it does so qualify. This inquiry is necessary because, as the state correctly points out, § 4003 was not specifically relied on by either the defendant or the state in the trial court. We conclude that the plea meets all of the requirements of § 4003 (b).

First, the plea specifically reserved in writing "the right to take an appeal pursuant to [General Statutes] § 54-94a or [Practice Book] § 4003," and specifically referred to the defendant's motion to suppress his two statements. Second, the colloquy before the trial court at the time of the plea makes it clear that, although the trial court was focusing on § 54-94a, rather than on § 4003 (b), it either explicitly or implicitly approved of the entry of the plea. It is also evident that the trial court implicitly determined that the statements at issue were of significant impact on the disposition of the case, and that there was an adequate record for appellate review. Finally, our review of the trial court record indicates that these determinations by the trial court are substantiated by that record.

The judgment of the Appellate Court is reversed and the case is remanded to that court for a determination of the merits of the defendant's appeal.

In this opinion the other justices concurred.