[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S RULE TO SHOW CAUSE ANDDEFENDANT'S MOTION TO MODIFY ALIMONY
The marriage of the parties was dissolved by this court, MacDonald, State Trial Referee, on April 4, 1983. At the time of dissolution the court ordered that the "plaintiff. . . . continue to pay the defendant weekly the sum of $175.00 as unallocated alimony and support subject to future modification upon a showing of substantial change in circumstances. (Memorandum of Decision, MacDonald, J. pg 5). In addition plaintiff was ordered to provide medical coverage for defendant and the minor son of the parties.
The marriage produced one child Richard Loso born June 30, CT Page 355-H 1973, diagnosed as autistic at age 3. That child now 23 years old, has been dependant upon, resided with and cared for by his mother throughout his childhood and to the present date. Richard is now employed "folding towels" which earns him approximately $30 per week. The defendant mother describes him as "comfortable and independent at home. . . . he speaks when spoken to. . . . he hits when upset."
The plaintiff father has had little if any contact with the child in the years since the dissolution, citing the opinion of a physician some years ago that "sporadic visitation would hurt the child". The entire burden of protecting and caring for Richard has fallen upon the defendant.
The defendant cohabitated during the years 1990-1991 and a second child was born to her, presently in her custody, and for whom she receives support from the father.
Before the court is the plaintiff's Rule to Show Cause seeking a termination of support, based upon the age of the child, 23, and a termination of alimony on the ground of the defendant's cohabitation. Also, before the court, is the defendant's motion to modify alimony upward upon the claim of a substantial change in circumstances since the original order in 1983. CT Page 355-I
Shortly after the dissolution decree the court found the plaintiff $584 in arrears of its order, resulting in a wage execution of $219 per week. The parties agree that long after the wage execution satisfied the plaintiff's arrearage, it continued at $219 per week, resulting in an overpayment of $19,136 over a period of 13 years and one month.
The court is mindful of the fact that § 46b-84 (b) provides that, with respect to dissolutions occurring on or after July 1, 1994, a parent's duty of support exits until the child "completes the twelfth grade or attains the age of nineteen, whichever first occurs." Since the dissolution in this case occurred in 1983, the parents' obligation to support their child terminated legally when Richard reached 18 years of age.
It is indeed unfortunate that the law does not require parents, who are able to extend financial support, to continue such support of a child, regardless of that child's chronological age, if said child remains dependent due to a profound physical or emotional disability. The court, nevertheless, must terminate the support of Richard by his father as he seeks such relief from the court. Richard's mother however, will continue providing both the financial and emotional support for her son, not because of any court order, CT Page 355-J but because of the love and responsibility she feels for her child.
With respect to the alimony portion of the current order, the court must consider whether the defendant's cohabitating in 1990-1991 should end her receipt of alimony from the plaintiff. An examination of the dissolution decision reveals that the alimony award was unlimited as to time or condition. Nor is this a case where a written agreement of the parties incorporated in the judgment set cohabitation as a ground for termination or modification. Therefore, the court must look to § 46b-86 (b) which provides as follows:
 ". . . .the Superior Court may, in its discretion, and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the . . . . alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."
"The process of statutory interpretation involves a reasoned CT Page 355-K search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, and to the legislative policy it was designed to implement. . . ." State v. Piorkowski, 236 Conn. 399, 404
(1996). "`It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent.'"Murchison v. Civil Services Commission, 234 Conn. 35, 45 (1995) quoted in State v. Anonymous, 237 Conn. 501 (1996).
Our Supreme Court has quoted with approval that § 46b-84 (b) was enacted "to correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex without marrying to prevent the loss of support." H.B. No. 6178, 1977 (Sess. (Statement of Purpose)", Connolly v.Connolly, 191 Conn. 468, 473-74 (1983).
In looking to the words of this statute it is clear that the legislature used the present tens (is living with another person) which is appropriate in view of the finding that the court must make in order to "suspend, reduce or terminate" alimony on the ground of cohabitation, that is an altering of the financial needs of the party". Such an altered financial status must be present in order for the court to be justified in CT Page 355-L applying the statute to the detriment of the alimony recipient.
The rule to show cause seeking alimony, termination in this case was filed by the plaintiff on February 10, 1995. The only evidence before the court as to defendant's cohabitating is with respect to the years 1990-1991. This produced the financial burden of a second child for which the defendant has and is receiving weekly support in the amount of $64.00 per week. The court is of the opinion that the expenses of caring for a child today more than offset this support payment thereby not producing a reduction in the financial needs of the defendant. Therefore, the court finds that defendant's cohabitation was in the past and has not caused a lasting alteration of the defendant's financial needs. Cohabitation is not an automatic ground for the termination of alimony. Burns v. Burns,41 Conn. App. 716, 725 (1996).[1] The plaintiff's rule to show cause seeking termination of alimony is denied and seeking termination of support of the child Richard Loso is granted.
Since the original order of the court was for unallocated alimony and support, the court must now set a new alimony order. With respect to the defendant's motion to increase alimony the court must consider whether the defendant has satisfied her burden of proving a substantial change in circumstances under § 46b-86 (a). CT Page 355-M
At the time of dissolution the financial affidavits of the parties revealed that the plaintiffs' net income was $269 per week and that the defendant was unemployed. Her assets were a 1/2 interest in the parties' mobile home valued at $15,000 and a savings account of $5,876 pledged as collateral on loans. Her liabilities were listed at $11,460 and weekly expenses were $250. Current financial affidavits reveal that the plaintiff husband's net income has increased to $478 on gross earnings of $886 per week. The plaintiff's W-2 for 1995 shows gross earnings of $59,729.94 as an employee of the United Illuminating Company. The defendant's affidavit reveals a net income of $227 per week from her employment as a bank teller, liabilities of $2,465 and bank savings in excess of $29,000. Her assets include a mobile home valued at $11,467. In addition the defendant has IRA and 401K accounts with a present value of $7,710. Thus, although the plaintiffs' net income has at least doubled in the 14 years since the dissolution of the parties, the defendant is far more secure in her financial picture now due to her employment and assets exceeding $50,000 in value. Therefore the court must conclude that because there has been a substantial change to the better in the financial circumstances of both parties, the defendant has failed to satisfy her burden of proving a substantial change justifying an increase in alimony. The court is mindful of the effects of inflation CT Page 355-N during the period from 1983 to the present. Inflation, however tends to result in an increase on both sides of the financial ledger, that is on income as well as on expenses. The court, therefore, will not consider it. The motion of the defendant to modify alimony, dated October 9, 1996 is denied.
The court must now determine an appropriate award of alimony for the defendant who earning $227 per week, in the opinion of the court, remains in need of alimony in order to support herself and her son, Richard. Therefore the court orders that the plaintiff pay the sum of $125 per week as alimony to the defendant. The court must consider however, the overpayment of the plaintiff of $19,136. In this regard, since the payment of unallocated alimony has resulted in a deduction for the plaintiff on his income tax liability and therefore a tax saving through the years, the court would urge the parties to arrive at a net figure for credit due the plaintiff on said overpayment, taking into account the tax savings to the plaintiff through the years. The court orders that the plaintiff receive a credit of $25 per week resulting in a weekly payment by the plaintiff of $100 until the reimbursement for said overpayment is accomplished.
DAVID W. SKOLNICK, JUDGE