******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

Convicted of the crimes of strangulation in the second degree and assault
in the third degree, the defendant appealed to this court. On appeal, he
claimed that the trial court erred in granting the state's motion to admit
into evidence a written statement he had given to the police during an
unrecorded custodial interrogation at the police station, which he
claimed violated the statute (§ 54-1o) that creates a presumption of
inadmissibility of statements from persons under investigation for cer-
tain crimes made as a result of custodial interrogation at a place of
detention unless an electronic recording is made of the custodial interro-
gation. The defendant also claimed that this court should invoke its
supervisory authority to order a new trial and to require the judges of
the Superior Court to instruct juries in a particular manner when faced
with statements or confessions obtained during unrecorded custodial
interrogations in violation of statute § 54-1o. *Held:*

1. The trial court properly admitted the defendant's written statement
   into evidence:
   a. The defendant's claim that the admission of his written statement
   had constitutional implications under the federal and state constitutions
   was unavailing; the defendant having cited no authority for his novel
   suggestion that the legislature created a new constitutional right by
   enacting § 54-1o, and having made no claim that his statement was
   taken in violation of *Miranda* v. *Arizona* (384 U.S. 436), the claim was
   evidentiary in nature.
   b. The trial court properly determined that although the defendant's
   statement was not recorded electronically and was, therefore, presumed
   inadmissible pursuant to § 54-1o (d), the statement was nonetheless
   admissible pursuant to the exception in subsection (h) of § 54-1o because
   the statement was voluntary and reliable under the totality of the circum-
   stances: that court's finding concerning the voluntary nature of the
   statement was proper in light of the evidence indicating that the defen-
   dant was advised of his *Miranda* rights twice before the statement was
   taken and signed a notice of rights form, that he did not request an
   attorney or request to remain silent, that there was no evidence of
   trickery, threats or coercion by the police, that the defendant was thirty-
   eight years old and had no issues in terms of being intoxicated or
   otherwise incapacitated, either mentally or physically, that the interroga-
   tion took place over an approximate one hour period in an office cubicle
   and was witnessed for the most part by a detective sergeant, and that
   the defendant read, made changes to, and signed the statement on each
   of its three pages, which specifically provided that it was voluntarily
   given and that the defendant was read, knew and understood his rights;
   moreover, although the parties disagreed as to what the court could
   properly consider in assessing the reliability of the defendant's statement
   and whether independent corroborating evidence was necessary, it was
   unnecessary for this court to determine whether there is a requirement
   under § 54-1o (h) that there be corroborating evidence of the contents
   of a confession for it to be considered reliable under the totality of the
   circumstances, as there was evidence to support the court's decision
   that the statement was reliable under either test advanced by the parties
   in that the evidence concerning the voluntariness of the statement also
   could have been used to determine its reliability, and there was indepen-
   dent evidence to corroborate many of the facts set forth in the defen-
   dant's statement.

2. The defendant's claim that the trial court abused its discretion in overruling
   his objection to an alleged misstatement of the prosecutor during closing
   rebuttal argument was not reviewable, the defendant having failed to
   brief the claim adequately.

3. This court declined to exercise its supervisory authority over the adminis-

tration of justice to order a new trial in the interests of justice or to create a rule requiring the Superior Court to give a cautionary instruction to the jury when it has admitted into evidence a defendant's statement that does not adhere to the recording requirements of § 54-1o (b); the defendant provided little analysis as to the necessity of such a rule, and the legislature chose not to include a requirement that the trial court give a cautionary instruction upon the state successfully overcoming the presumption of inadmissibility under one of the factors established by the legislature.

Argued September 6—officially released November 20, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of burglary in the first degree, kidnapping in the second degree, strangulation in the second degree, and assault in the third degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Bentivegna, J.*; verdict and judgment of guilty of strangulation in the second degree and assault in the third degree, from which the defendant appealed to this court. *Affirmed.*

*Timothy H. Everett*, with whom were *Michael Edelson*, certified legal intern, and, on the brief, *Andrew Ammirati*, certified legal intern, and *Shaun D. Loughlin*, certified legal intern, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Richard J. Rubino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The primary issue in this appeal involves the admissibility at trial of the defendant's written statement, which was made during an unrecorded custodial interrogation at the Enfield police station. The defendant, Christopher M. Spring, appeals from the judgment of conviction, rendered after a jury trial, of strangulation in the second degree in violation of General Statutes § 53a-64bb (a) and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] On appeal, the defendant claims that (1) the court erred when it granted the state's motion to admit his statement, which was taken in violation of General Statutes § 54-1o,[2] during an unrecorded custodial interrogation, because the state failed to prove that the statement was both voluntarily given and reliable under the totality of the circumstances, as required by § 54-1o (h), (2) the court abused its discretion when it overruled an objection made by the defendant regarding an inaccurate argument made by the state about the defendant's statement, and (3) this court should exercise its supervisory authority over the administration of justice by ordering a new trial in this case and by requiring the judges of our Superior Court to instruct juries in a particular manner when faced with statements or confessions obtained during unrecorded custodial interrogations that violate § 54-1o. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts, which are necessary to our review of the defendant's claims. The Enfield police arrested the defendant on May 3, 2015, at approximately 5:30 a.m., on multiple charges, including class A or B felonies, following a physical altercation between the defendant and the victim. Enfield Police Officer Mark Critz read the defendant his *Miranda*[3] rights at the time he was arrested and, again, when he was brought to the police station, where he signed a notice of rights form at approximately 7:23 a.m. He then was taken to lock up. Several hours later, at approximately 1:10 p.m., the defendant was interrogated by Detective Martin Merritt of the Enfield Police Department. The interrogation took place at Merritt's desk, which is in a large room with cubicles that had walls about five feet tall, and was not video recorded. Merritt did not readvise the defendant of his *Miranda* rights because Critz had informed him that the defendant had been provided such warnings twice already. In addition, the defendant confirmed to Merritt that he had been advised of his rights. Merritt asked the defendant to explain what had happened the night before and took notes as the defendant recounted the events leading up to his arrest.

After the defendant finished giving his oral statement, Merritt prepared a written statement on an Enfield Police Department form. The defendant then reviewed, edited, initialed and signed the statement three times

below an acknowledgement that reads: "I HAVE READ THE ABOVE STATEMENT AND IT IS TRUE TO THE BEST OF MY KNOWLEDGE. I FULLY UNDERSTAND THAT IF I MAKE A FALSE STATEMENT THAT IS UNTRUE AND WHICH IS INTENDED TO MISLEAD A LAW ENFORCEMENT OFFICER IN THE PERFORMANCE OF HIS OFFICIAL FUNCTIONS I WILL BE IN VIOLATION OF [GENERAL STATUTES] SECTION 53A-157, CONNECTICUT GENERAL STATUTES. A FALSE STATEMENT IS A CLASS A MISDEMEANOR, WHICH IS PUNISHABLE UP TO 1 YEAR IN JAIL AND/OR A $1000 FINE AND NOT MORE THAN 3 YEARS PROBATION."

In the statement, the defendant acknowledged, by initialing specific sentences, that he had been advised of his rights, understood those rights, was making the statement of his own free will, without any threats or promises having been made, and that he was giving the statement voluntarily. Also in the written statement, the defendant acknowledged, in relevant part, the following events: The defendant and others were watching "the fight" on television, during a party. Later, wanting to talk to the victim, the defendant went to her residence.[4] After the defendant knocked on a window to the apartment, the victim opened the door. Shortly thereafter, the defendant took the victim for a ride in his vehicle, where they immediately started to argue. The defendant pulled over the vehicle, choked the victim with his hands, punched her, and slapped her repeatedly. The victim tore off the defendant's necklace, and she punched him in the face, causing his gums to bleed. After the fight, both the victim and the defendant had a lot of blood on them. The defendant drove to someone's apartment, where both he and victim cleaned up. Someone then telephoned the police. Soon thereafter, the defendant went for a walk. The police then arrested him. After making whatever changes to the written statement that he thought were necessary, the defendant initialed each change, and he signed each page of the statement.

On April 27, 2016, shortly before the defendant's trial began, the state, pursuant to § 54-1o, filed a motion seeking permission to introduce the defendant's signed statement into evidence during its case-in-chief.[5] In its motion, the state requested an evidentiary hearing wherein it could establish an exception to the custodial interrogation recording requirement under subsections (e) and (h) of § 54-1o. See footnote 2 of this opinion. The court held the hearing on May 2, 2016.

During the hearing, Critz testified that he read the defendant his *Miranda* rights when he arrested him in an outdoor area at approximately 5:30 a.m. on May 3, 2015, as he had been directed to do by his detective sergeant, who, at that time, was talking to the victim. Critz observed that the defendant was bleeding from his mouth at that time. Critz also acknowledged that

the defendant told him that he had been at a party, watching the "Pacquiano" fight. Critz further stated that he again read the defendant his rights after he was transported to the police station, and the defendant signed a notice of rights form at approximately 7:23 a.m.

The state also called Merritt, the lead detective in the defendant's case, as a witness at the hearing. Merritt testified that, at approximately 1:10 p.m., he spoke with the defendant at the police station in an interview that lasted approximately one hour, and that the defendant told him what had happened. Thereafter, Merritt handwrote the defendant's statement, which the defendant then reviewed, and, after making several changes to the statement, the defendant initialed the changes, and signed each of the three pages of the document. Merritt denied that the defendant smelled of alcohol or had slurred speech, stating that "[h]e seemed fine to me . . . ." When asked why he did not record electronically his interview of the defendant, Merritt explained that they had been having difficulties with their recording system, and he believed that it had not been working properly at that time, but he was not positive. He also stated that it could have been possible that the defendant requested that the interview not be recorded, but he had no specific recollection and did not write down any reason for not recording the interview. Defense counsel asked Merritt whether he had a cell phone with recording capabilities and whether there was recording equipment in the holding cells. Merritt responded affirmatively to both questions. The state also called Detective Sergeant Daniel Casale to testify. Casale stated that he oversaw the process of the defendant's interrogation, standing by to ensure that no issues developed. He explained that his office was a mere twenty feet away from Merritt's cubicle, which he could see from his office, and that he "was bouncing back and forth between . . . Merritt's desk and [his] office doing paperwork . . . ." Casale admitted to knowing that the police had an "obligation" to make a video recording of the defendant's interview and statement, and he acknowledged that he had no explanation as to why this interview was not recorded.

Following the close of testimony, the defendant argued that the state had failed to establish an exception to § 54-1o, under either subsection (e) or (h), and that the court, therefore, should deny the state's motion to admit the defendant's statement, which was taken in violation of the statute. The court, ruling from the bench, stated in relevant part: "[T]he defendant was . . . under formal arrest. There was a postbooking statement. The defendant was subjected to police interrogation. This was a custodial interrogation at a police station. No electronic recording was made. The written statement [was taken from a] person under investigation or accused of a . . . class A or B felony . . . . [T]he court finds by the preponderance of the evidence

that there was no compliance with the electronic recording requirement, and . . . based on that, the statement is presumed to be inadmissible as evidence . . . ."

The court then considered the claimed exceptions to the statute that had been argued by the state, particularly subsections (e) (2) and (h) of the statute. The court found that subsection (e), and, in particular, subsection (e) (2), did not apply because, although there was testimony regarding a possible problem with the electronic recording equipment in the area where the defendant had been interrogated, there were other recording alternatives available. The court then analyzed the exception in subsection (h), which it referred to as a "catchall exception," examining multiple factors in its consideration of the totality of the circumstances. Thereafter, the court found, on the basis of its assessment of the totality of the circumstances, "that the [defendant's] statement was pursuant to a knowing, intelligent, and voluntary waiver of the defendant's *Miranda* rights, and that the statement was voluntarily given, and that the statement was reliable." The court further found that there was no evidence of any coercion. On the basis of these findings, along with the "fact that the defendant was able to read the statement and he made corrections to the statement, and he signed the statement," the court granted the state's motion to introduce the statement during its case-in-chief.

The defendant proceeded to trial on the amended charges of burglary in the first degree, kidnapping in the second degree, strangulation in the second degree, and assault in the third degree. During the state's case-in-chief, it offered the defendant's statement into evidence through Merritt's testimony. The defendant raised no objections to the offer "other than those previously noted." The court admitted the statement into evidence.

The defendant's statement was addressed by both defense counsel and the prosecutor during closing arguments. Defense counsel argued forcefully that the jury should disregard the statement in its entirety given the circumstances under which it was made and "most importantly of all" because it was not videotaped as required by law. In rebuttal, the prosecutor argued that the jury should reject defense counsel's suggestion that they ignore the statement because "it came in without objection, and . . . is a full exhibit." Defense counsel immediately responded by interjecting, "[t]hat's not true, judge." The court responded by overruling the defendant's objection. Thereafter, the jury found the defendant guilty of strangulation in the second degree and assault in the third degree. It found him not guilty on the remaining two charges. This appeal followed.

While this appeal was pending, the defendant filed a motion for articulation and a motion for further articula-

tion, requesting in each that the trial court further explain its decision to grant the state's motion to admit into evidence the defendant's statement. The trial court granted the defendant's motions, further explained its decision, and answered the specific requests for articulation raised by the defendant. Specifically, the court articulated: (1) Merritt's failure to record his interrogation of the defendant was not done in bad faith, intentionally, recklessly, or negligently; (2) Merritt's testimony was credible, and his testimony regarding the malfunctioning of the recording system around the time that the defendant was arrested was not implausible; (3) there was no evidence that the defendant actually waived his *Miranda* rights prior to his interview with Merritt, only that he was advised of those rights; (4) Merritt did not advise the defendant of his rights for a third time because the defendant already had been advised twice of those rights, and the defendant willingly spoke to Merritt, waiving his *Miranda* rights at that time; and (5) the defendant's statement was voluntary and reliable as evidenced by the defendant's review of the statement and the multiple changes that he made to the statement, initialing each change, and then signing each page of the statement. Additional facts will be set forth as necessary.

I

The defendant claims that the court erred in granting the state's motion to admit his statement into evidence because it was taken in violation of § 54-1o (b) and the state failed to prove that the statement was both voluntarily given and reliable under the totality of the circumstances, as required by the exception found in subsection (h) of the statute. He contends that the court conflated the requirements of voluntariness and reliability under § 54-1o (h), thereafter finding that the state had met its burden. The defendant also alleges, although he has made no claim that his statement was taken in violation of *Miranda*,[6] that the trial court's decision to admit the statement has both federal and state constitutional implications. The state argues that this is a purely evidentiary matter involving a state statute and that the court properly concluded that the statement was both voluntarily given and reliable in accordance with § 54-1o (h). We agree with the state.

Before setting forth our standard of review, we first consider whether the defendant's claim is one of constitutional magnitude. Our law is quite clear. Neither federal nor state constitutional law, nor the supervisory authority of our Supreme Court, *requires* the recording of custodial interrogations and the statements made as a result thereof. *State* v. *Edwards*, 299 Conn. 419, 444, 11 A.3d 116 (2011); *State* v. *Lockhart*, 298 Conn. 537, 542–77, 4 A.3d 1176 (2010); see also *State* v. *James*, 237 Conn. 390, 429, 678 A.2d 1338 (1996) ("article first, § 8 [of Connecticut constitution] does not require elec-

tronic recording in order for a confession to be admissible at trial"). Instead, our Supreme Court in *Edwards* specifically deferred "to the legislature and its determination whether to establish such a recording requirement." *State* v. *Edwards*, supra, 444. The legislature did just that when it enacted § 54-1o.

Here, the defendant raises no claim that his statement was taken in violation of *Miranda*. Rather, he claims that there are constitutional implications to the failure to record his statement in violation of § 54-1o. Essentially, he argues that the legislature, by enacting § 54-1o, has created a new constitutional right. The defendant has cited no authority for his novel suggestion that the legislature can create constitutional rights and we are aware of none. Consequently, we disagree with this proposition and conclude, on the basis of our Supreme Court precedent, that the defendant's claim is purely evidentiary in nature.

"The standard that we apply in reviewing a trial court's evidentiary ruling depends on the context in which the ruling was made. . . . When a trial court's determination of admissibility is founded on an accurate understanding of the law, it must stand unless there is a showing of an abuse of discretion. . . . When the admissibility of the challenged testimony turns on the interpretation of an evidentiary rule, however, we are presented with a legal question and our review is plenary." (Citations omitted; footnote omitted.) *State* v. *Burney*, 288 Conn. 548, 555, 954 A.2d 793 (2008). Here, because the defendant challenges in part the court's interpretation of the exception found in § 54-1o (h), as well as the court's findings that the defendant's statement was both voluntarily given and reliable, we employ a mixed standard of review. We first consider the relevant portions of the statute.

Section 54-1o (b) provides: "An oral, written or sign language statement of a person under investigation for or accused of a capital felony or a class A or B felony made as a result of a custodial interrogation at a place of detention shall be presumed to be inadmissible as evidence against the person in any criminal proceeding unless: (1) An electronic recording is made of the custodial interrogation, and (2) such recording is substantially accurate and not intentionally altered."

Section 54-1o (d) provides: "If the court finds by a preponderance of the evidence that the person was subjected to a custodial interrogation in violation of this section, then any statements made by the person during or following that nonrecorded custodial interrogation, even if otherwise in compliance with this section, are presumed to be inadmissible in any criminal proceeding against the person except for the purposes of impeachment."

There is no dispute in this case that the defendant

was undergoing a custodial interrogation while under investigation or accused of a class A or B felony when he gave a statement to police, which was recorded in writing by Merritt and signed by the defendant on each page, after the defendant made and initialed several changes. Because the interrogation was not recorded electronically, pursuant to the plain language of § 54-1o (b), the defendant's written statement is presumed inadmissible as evidence against the defendant in his criminal trial, except for impeachment purposes, as set forth in subsection (d).

The statute, however, contains several exceptions that, if met, would overcome the presumption of inadmissibility. Relevant to this appeal is the exception set forth in § 54-1o (h), which provides: "The presumption of inadmissibility of a statement made by a person at a custodial interrogation at a place of detention may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances." In this matter, the trial court found, by a preponderance of the evidence and on the basis of the totality of the circumstances, that the defendant's statement was both voluntarily given and reliable. The defendant claims that this was error because the state failed to prove that the statement was both voluntarily given and reliable. We disagree.

As to the voluntariness of the defendant's statement, the defendant argues that the court "assumed that proof of compliance with the dictates of *Miranda* . . . would satisfy the requirement . . . that the defendant's statement was voluntarily given." (Citation omitted; internal quotation marks omitted.) He further argues that the court overlooked "the distinction in constitutional law between the *Miranda* doctrine and the voluntariness doctrine." We are not persuaded.

In the due process context, our Supreme Court has set forth several factors that may be considered when determining whether a statement has been voluntarily given. "The determination of whether a confession is voluntary must be based on a consideration of the totality of circumstances surrounding it . . . including both the characteristics of the accused and the details of the interrogation. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . The state is required to prove the voluntariness of a confession by a preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Ramos*, 317 Conn. 19, 32, 114 A.3d 1202 (2015); see also *State* v. *Lawrence*, 282 Conn. 141, 153–54, 920 A.2d 236 (2007).

Because the legislature has not provided a different test for determining voluntariness under the statute, we conclude that the same factors that traditionally are used under a due process analysis are relevant in determining voluntariness under § 54-1o (h).

Here, the trial court, citing *State* v. *Azukas*, 278 Conn. 267, 289–90, 897 A.2d 554 (2006), specifically recognized that its voluntary analysis needed to go beyond *Miranda* and examine the totality of the circumstances to determine whether "the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely determined . . . ." (Internal quotation marks omitted.) Id., 290. Thus, contrary to the defendant's suggestion, the court applied the proper legal test when determining whether the defendant voluntarily gave his statement. Applying the correct test, the court found the following: The defendant was thirty-eight years old and there were "no issues in terms of the defendant being intoxicated or otherwise incapacitated, either mentally or physically." Critz twice read the defendant his *Miranda* rights, and the defendant signed a notice of rights form at the police station. Although the defendant was bleeding from his mouth, he was not in any pain or suffering from any serious physical injury. The defendant did not request an attorney and did not request to remain silent. The defendant was questioned primarily by one officer, Merritt. When the defendant was interrogated by Merritt, he was seated in an open cubicle. Merritt asked the defendant whether he was willing to speak with him about the incident and the defendant thereafter spoke with him, while Merritt took notes. The interview lasted only about one hour. Casale went in and out of the interview area and witnessed the interrogation. The defendant signed a written statement, which provided in relevant part that it was truthful and that it was the product of the defendant's "own free will." There was no evidence of trickery, threats, promises or coercive or deceptive measures by the police. On the basis of these findings, which are supported by the record, we conclude that the defendant has failed to establish that the trial court improperly concluded that the defendant's statement was given voluntarily.

We next turn to the reliability factor. The defendant argues: "To prove that a statement is sufficiently reliable to be admitted into evidence requires evidence that . . . confirms the truth of its content, i.e., that corroborates it. . . . Our courts have consistently understood that corroboration of a statement requires more than a showing that it is internally coherent. To corroborate a confession requires *independent* evidence." (Emphasis in original; internal quotation marks omitted.) The defendant also argues: "The fact that a suspect can read and write and is given an opportunity to edit a statement has some bearing on the fairness of the process . . . but it is not extrinsic corroborative

evidence of the statement's reliability. Here, the state . . . failed to adduce any independent (extrinsic) evidence bearing on the statement's reliability—its truth, accuracy and trustworthiness."

In response, the state contends that all of the circumstances surrounding the giving of a statement are relevant to its reliability, but there is no requirement under our law that there be independent corroborating evidence of the contents of the statement. It argues: First, "our case law is clear that the manner in which police took the defendant's statement—and, particularly, whether they engaged in coercive or deceptive measures—is relevant to the *reliability* of the statement. . . . Second, the defendant's claim that the state failed to adduce any evidence during the motion hearing that corroborated the truthfulness of the content of the statement simply is not supported by the record." (Citations omitted; emphasis in original.) Despite the state's position that there was corroborating evidence, it firmly "disputes the defendant's assertion that [it] must present evidence that corroborates aspects of an unrecorded statement in order to satisfy the reliability component to § 54-1o (h)." (Emphasis omitted.) It argues: "The defendant's position finds no support in the statutory text or in Connecticut jurisprudence. See *State* v. *Flores*, 319 Conn. 218, 226–27, [125 A.3d 157] (2015) (finding informant's tip 'reliable' even though it lacked independent corroboration, [cert. denied, U.S. , 136 S. Ct. 1529, 194 L. Ed. 2d 615 (2016)])."

In addition, the state also argues that the record contains considerable "findings and evidence that support the trial court's determination that the state had proven, by a preponderance of the evidence, that the defendant's statement was reliable. . . . [T]he defendant never disputed the accuracy of the contents of the statements, or the fact that he read, understood, initialed, and signed it. . . . Also undisputed were the facts that the statement described events that occurred less than twelve hours earlier . . . and that the statement contained statements against penal interest, including admissions of guilt to two of the four crimes for which the police were investigating the defendant. . . . Lastly, the trial court found that the defendant was not suffering from any mental or physical impairment that would have affected his capacity to give an accurate statement." (Citations omitted; footnotes omitted.)

After fully considering the well thought out and thorough arguments of the parties, as raised in their briefs and at oral argument before this court, along with the many cases cited by them, we conclude that it is unnecessary for us to decide in this particular case whether there is a requirement under § 54-1o (h) that there be corroborating evidence of the contents of a confession for it to be considered "reliable, under the totality of the circumstances." In this case, there is evidence to

support the trial court's decision under both tests, namely, (1) a consideration of the circumstances surrounding the defendant's statement to police and (2) whether there was corroborative evidence of the contents of that statement presented at the hearing.

The evidence credited by the trial court demonstrates that the defendant had been advised of his *Miranda* rights on two occasions earlier in the morning. He was sober and did not appear to be under the influence of drugs or alcohol, and there was no issue regarding his mental or physical well-being, despite the presence of blood on his clothes and the fact that he had been bleeding from his mouth. The defendant was approximately thirty-eight years old. At approximately 1 p.m., he was interrogated by Merritt and agreed to tell Merritt what had happened. This interrogation took place in an office cubicle, over an approximate one hour period, and, for the most part, was witnessed by Casale. The defendant then read the written statement prepared by Merritt, which set forth the facts as told to him by the defendant. While reading that statement, which specifically provided that it was voluntarily given and that the defendant had been read, knew, and understood his rights, the defendant made several corrections and initialed those corrections.[7] He then signed each page of the three page statement.

The defendant argues that these types of facts, as found and relied on by the trial court, address only the voluntariness of a statement and not the reliability of a statement. Although we agree that these facts certainly shed light on the voluntariness of a statement, we see no reason why they cannot be used to determine whether the defendant's statement also is reliable. In fact, both our Supreme Court and this court repeatedly have relied on evidence as to the coerciveness of police procedures and the circumstances surrounding defendants' interrogations and statements to assess the reliability of such statements. See *State* v. *Carrion*, 313 Conn. 823, 838, 100 A.3d 361 (2014) (statement made under circumstances so unduly coercive as to grievously undermine reliability may be deemed untrustworthy); *State* v. *Pierre*, 277 Conn. 42, 61–62, 890 A.2d 474 (fact that witness indicated he was giving statement freely and that he reviewed statement with attorney, and signed it in eight places demonstrated lack of coercion, providing sufficient indicia of reliability for admission of statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 [1986], cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006); *State* v. *Collins*, 147 Conn. App. 584, 594–95, 82 A.3d 1208 (involuntariness of defendant's statements to police may undermine statements' reliability), cert. denied, 311 Conn. 929, 86 A.3d 1057 (2014).

Additionally, although the trial court did not state

specifically that it relied on corroborating evidence in its consideration of the reliability factor, the record of the hearing certainly demonstrates that there was independent evidence to corroborate many of the facts set forth in the defendant's statement.

In his statement, the defendant stated that he had been outside walking when he was arrested, that both he and the victim had gotten bloody during their altercation, and that he was bleeding from his mouth. This information was corroborated by Critz, who testified that the defendant was outside and walking toward him, when Critz went to speak with him and subsequently arrest him. Critz also testified that the defendant had blood on his shirt and cell phone, and that he was bleeding from his mouth. Additionally, in his statement, the defendant also stated that that he and others had been at a party watching "the fight" on television before he went to see the victim. At the hearing, Critz corroborated this statement when he acknowledged that the defendant had told him that he had been at a party watching the "Pacquiano" fight before he went to see the victim. Finally, Critz testified that he was told by his detective sergeant, who, at the time, was talking to the victim, to read the defendant his rights and to detain him for questioning. This evidence corroborated that there had been an altercation between the defendant and the victim, which the defendant described in his statement.

In consideration of the foregoing, using both the test of the surrounding circumstances as advanced by the state and the test of independent corroborating evidence as advanced by the defendant, we conclude that the defendant has failed to establish that the trial court improperly determined that the defendant's statement was reliable. Accordingly, the defendant having failed to meet his burden, we conclude that the court properly ruled that the statement was admissible as evidence at the defendant's criminal trial.

## II

The defendant next claims that the court abused its discretion when it overruled his objection to the prosecutor's statement, made during closing rebuttal argument, that the defendant's statement had been admitted into evidence without objection. The defendant claims that the court's ruling was in error because the defendant clearly had objected, albeit outside the presence of the jury, to the admission of his statement. Although his primary appellate brief sets forth the defendant's argument as to why the court erred, it fails to address how the court's ruling was harmful. During oral argument before this court, we asked the defendant about his failure to conduct a harmful error analysis in his primary appellate brief. The defendant, thereafter, conceded that this claim was deficiently briefed. Accordingly, we decline to review it. See *State* v. *Njoku*,

163 Conn. App. 134, 145 and n.9, 133 A.3d 906 (declining to review merits of claim because defendant concededly failed to conduct harmful error analysis), cert. denied, 321 Conn. 912, 136 A.3d 644 (2016).

## III

The defendant's final claim, set forth on the last two pages of his appellate brief, is that this court should exercise its supervisory authority over the administration of justice to order our Superior Court to instruct juries "to evaluate with particular caution statements obtained by custodial interrogation that [are] out of compliance with the recording mandate in . . . § 54-10o (b)," and to order that the defendant be given a new trial because the trial court in this case did not give such an instruction.[8] We decline the defendant's invitation.

In support of his request, the defendant relies on the brief discussion of a New Jersey rule of court and *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 813 N.E. 2d 516 (2004), by our Supreme Court in a footnote in *State* v. *Lockhart*, 298 Conn. 537, supra, 564 n.11. Specifically, that footnote provides: "The rule established by the New Jersey Supreme Court also provides that the trial court should consider the unexcused failure to record a custodial interrogation when determining whether the state may introduce testimony describing the interrogation. N.J. Court Rules 3:17 (d). Additionally, the court is required to give the jury a cautionary instruction in such cases; N.J. Court Rules 3:17; and a report issued by the New Jersey Supreme Court Special Committee on Recordation of Custodial Interrogations in 2005 recommended an instruction that the jury has 'not been provided with a complete picture of all of the facts surrounding the defendant's alleged statement and the precise details of that statement.'

"Similarly, the Supreme Judicial Court of Massachusetts, after declining to make the electronic recording of the defendant's interrogation a prerequisite to the admissibility of his statement, concluded that defendants are entitled to a cautionary instruction regarding the use of an interrogation when the interrogation was not reliably preserved by a complete electronic recording. *Commonwealth* v. *DiGiambattista*, [supra 442 Mass. 447–49]." Id. This quote, essentially, is the entirety of the defendant's discussion and analysis of his request that we exercise our supervisory authority, an extraordinary measure reserved for matters of utmost seriousness.

"The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of

the judicial system as a whole." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Lockhart*, supra, 298 Conn. 576. "Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts. . . . Overall, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . Thus, we are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498–99, 102 A.3d 52 (2014).

In this case, the defendant has provided us little analysis as to the necessity of a rule requiring our Superior Court to give a cautionary instruction to the jury when it has admitted into evidence a defendant's statement that was given to an interrogating law enforcement official who had not adhered to recording requirements under § 54-1o (b). In adopting § 54-1o, our legislature has set forth that such statements are presumed inadmissible unless the state can establish, by a preponderance of the evidence, specific criterion that overcome such a presumption. The legislature also chose not to include a requirement that the trial court give a cautionary instruction upon the state successfully overcoming the presumption of inadmissibility under one of the factors established by the legislature. Under these circumstances, we decline the invitation made by the defendant to create such a requirement through the exercise of our supervisory authority.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant not guilty of the additional charges of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2) and kidnapping in the second degree in violation of General Statutes § 53a-94 (a).

[2] General Statutes § 54-1o provides in relevant part: "(a) For the purposes of this section:

"(1) 'Custody' means the circumstance when (A) a person has been placed under formal arrest . . .

"(2) 'Interrogation' means questioning initiated by a law enforcement official . . .

"(3) 'Custodial interrogation' means any interrogation of a person while such person is in custody;

"(4) 'Place of detention' means a police station or barracks . . . and

"(5) 'Electronic recording' means an audiovisual recording made by use of an electronic or digital audiovisual device.

"(b) An oral, written or sign language statement of a person under investigation for or accused of a capital felony or a class A or B felony made as

a result of a custodial interrogation at a place of detention shall be presumed to be inadmissible as evidence against the person in any criminal proceeding unless: (1) An electronic recording is made of the custodial interrogation, and (2) such recording is substantially accurate and not intentionally altered. . . .

"(d) If the court finds by a preponderance of the evidence that the person was subjected to a custodial interrogation in violation of this section, then any statements made by the person during or following that nonrecorded custodial interrogation, even if otherwise in compliance with this section, are presumed to be inadmissible in any criminal proceeding against the person except for the purposes of impeachment.

"(e) Nothing in this section precludes the admission of . . .

"(2) A statement made during a custodial interrogation that was not recorded as required by this section because electronic recording was not feasible;

"(3) A voluntary statement, whether or not the result of a custodial interrogation, that has a bearing on the credibility of the person as a witness . . .

"(6) A statement made during a custodial interrogation by a person who requests, prior to making the statement, to respond to the interrogator's questions only if an electronic recording is not made of the statement, provided an electronic recording is made of the statement by the person agreeing to respond to the interrogator's question only if a recording is not made of the statement . . . and

"(8) Any other statement that may be admissible under law.

"(f) The state shall have the burden of proving, by a preponderance of the evidence, that one of the exceptions specified in subsection (e) of this section is applicable.

"(g) Nothing in this section precludes the admission of a statement, otherwise inadmissible under this section, that is used only for impeachment and not as substantive evidence.

"(h) The presumption of inadmissibility of a statement made by a person at a custodial interrogation at a place of detention may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances. . . ."

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] In accordance with General Statutes § 54-86e, we decline to identify the victim or others through whom the victim's identity may be ascertained.

[5] The trial court's list of motions form shows the date of the filing of this motion as April 20, 2016. The court's date stamp on the motion, however, shows a date of filing of April 27, 2016, which is also the date typewritten on the motion.

[6] This fact was clarified during oral argument before this court.

[7] Specifically, the defendant's statement provided in relevant part: "I, Christopher Spring . . . give the following truthful statement to the Enfield Police Dep[artment] of my own free will, with no threats or promises made to me. When I was arrested earlier this date, I was advised of my rights. I understand those rights and give this statement voluntarily."

[8] The defendant neither requested that the trial court give such an instruction in this case, nor offered any objection to the instructions that were given by the court, a copy of which he had been given well in advance of the jury's final charge. If this claim were of constitutional dimension, it likely would be deemed waived under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). Our Supreme Court, however, has declined to apply the waiver rule to requests that we exercise our supervisory authority to adopt a new rule regarding a special jury instruction. See *State* v. *Diaz*, 302 Conn. 93, 100 n.5, 25 A.3d 594 (2011) (although state argued that defendant waived claim by failing to request special credibility instruction, claim was not waived because defendant was requesting adoption of new rule requiring trial courts to give special instruction; therefore, any such claim to trial court would have been futile).