******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, J., with whom KAHN, J., joins, concurring. Respectfully, I concur in the result. I agree with the majority that the state met its burden under General Statutes § 54-1o (h) in the present case and, therefore, that the judgment of the Appellate Court should be affirmed. Where I part ways with the majority is in its conclusion "that the defendant's claim with respect to voluntariness is constitutional." I disagree that, by merely using the term "voluntarily" in that statute, the legislature intended to, or even properly could, create a constitutional claim for a violation of a statute governing the recording of statements taken in a place of detention. Although I agree that there may be overlap between the constitutional requirement for voluntariness and the statutory requirement in § 54-1o (h), that does not, in my view, render a claim made under the statute to be of constitutional magnitude. Thus, I would agree with the reasoning of the Appellate Court, which concluded that the claim of the defendant, Christopher S., under § 54-1o was a purely evidentiary claim and reviewable on appeal as such. See *State* v. *Spring*, 186 Conn. App. 197, 207–208, 199 A.3d 21 (2018).

First, this court clearly has explained that neither the federal constitution nor our state constitution requires the recording of custodial interrogations and the statements made therein. See, e.g., *State* v. *Lockhart*, 298 Conn. 537, 539–40, 575, 4 A.3d 1176 (2010). Indeed, we repeatedly have rejected such a claim and declined to exercise our supervisory authority to mandate such a recording. See, e.g., *State* v. *Edwards*, 299 Conn. 419, 443–44, 11 A.3d 116 (2011); *State* v. *Lockhart*, supra, 543–44, 577; *State* v. *James*, 237 Conn. 390, 428–29, 434 and n.36, 678 A.2d 1338 (1996). As the majority points out, in *Lockhart*, we left it to the legislature to determine whether to establish any recording requirement. See *State* v. *Lockhart*, supra, 561, 574, 577; see also *State* v. *Edwards*, supra, 444. Our pronouncement in *Lockhart* cannot be read to mean that we left it to the legislature to establish any constitutional rights with respect to the recording of custodial interrogations. Indeed, the legislature simply does not have that power. See, e.g., *Boerne* v. *Flores*, 521 U.S. 507, 524, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) ("[t]he power to interpret the [c]onstitution in a case or controversy remains in the [j]udiciary"). Like the Appellate Court, I am aware of no authority permitting the legislature to create constitutional rights by statute.

Thus, in light of our express rejection of the claim that there is a constitutional right to recorded interrogations, the legislature was not writing on a clean slate. To be sure, in developing § 54-1o, not only was the legislature operating with the knowledge that the

recording requirement in § 54-1o was not constitution-ally required, but also it is not clear to me that the legislature even could go beyond its legislative mandate of developing statutory rights to creating constitutional rights. Put differently, the requirements outlined in § 54-1o are statutory, not constitutional, because the legisla-ture does not establish constitutional requirements. Therefore, I would conclude that any claim under § 54-1o is not of constitutional magnitude.

Second, although I disagree with the majority that the legislature's use of the term "voluntarily" incorporated a constitutional dimension into § 54-1o (h), I do agree that the understanding of the term "voluntarily" in § 54-1o (h) is informed by how that term is used and defined in our law. In addition, by using this term in a criminal statute, I also agree that "the legislature intended the [term] to mean what [criminal] lawyers and judges [who preside over criminal proceedings] would most natu-rally think it means, namely, what its meaning has long been in the law of confessions." *State* v. *Piorkowski*, 236 Conn. 388, 409, 672 A.2d 921 (1996).[1] That meaning, for purposes of due process, is that "the defendant's will was overborne by the police in eliciting the state-ment." Id., 404.[2]

In order to determine whether a statement was, in fact, voluntary, this court has set forth several factors that may be considered. Specifically, we have explained that "[t]he determination of whether a confession is voluntary must be based on a consideration of the total-ity of circumstances surrounding it . . . including both the characteristics of the accused and the details of the interrogation. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelli-gence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and pro-longed nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . The state is required to prove the voluntariness of a confession by a preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Ramos*, 317 Conn. 19, 32, 114 A.3d 1202 (2015); see also *State* v. *Lawrence*, 282 Conn. 141, 153, 920 A.2d 236 (2007).

I agree with the Appellate Court that, in determining whether a statement is voluntary for purposes of § 54-1o (h), the factors used in the due process context for determining voluntariness are applicable. See *State* v. *Spring*, supra, 186 Conn. App. 211 ("[b]ecause the legis-lature has not provided a different test for determining voluntariness under the statute, we conclude that the same factors that traditionally are used under a due process analysis are relevant in determining voluntari-ness under § 54-1o (h)"). Indeed, I would conclude that, by its use of the term "voluntarily," the legislature meant for judges to use the factors traditionally used to deter-

mine voluntariness when evaluating a statutory claim under § 54-1o (h).

It is a different question, however, whether, by use of the term "voluntarily," the legislature intended to go beyond simply requiring that voluntariness be determined by our traditional factors to intending that the mere use of the term turns a claim under § 54-1o (h) into one of constitutional magnitude. I would conclude that the legislature did not intend to and, indeed, could not create a constitutional claim through the adoption of § 54-1o (h). Instead, it is clear to me that the legislature intended that the term "voluntarily" have the meaning it has long had in the law of confessions for purposes of the statutory protections provided by § 54-1o (h), but not that a claim under the statute is a constitutional claim, rather than a statutory one. Although the majority's position is tempting and provides § 54-1o with stronger teeth, I would not ignore the well established separation of powers doctrine and allow constitutional rights to be created through legislative fiat.

I fully acknowledge that there is overlap between what due process requires by way of voluntariness and what § 54-1o (h) requires for the state to rebut the presumption of inadmissibility of an unrecorded statement. But the overlap does not transform this statutory requirement into a constitutional right. In other words, a claim under subsection (h) of § 54-1o is a statutory claim, despite the fact that the requirements in that subsection may overlap with certain constitutional principles.[3]

Indeed, § 54-1o is not the only statute in which constitutional and statutory protections overlap. For instance, in *State* v. *Urbanowski*, 163 Conn. App. 377, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017), the Appellate Court examined a claim under General Statutes (Rev. to 2011) § 53a-64bb (b),[4] which provides that "[n]o person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information." See *State* v. *Urbanowski*, supra, 386 and n.4. The statutory protections in § 53a-64bb (b) clearly overlapped with the constitutional principle against double jeopardy. The same incident requirement under the statute is virtually indistinguishable from the same transaction or occurrence requirement under double jeopardy. See *State* v. *Miranda*, 142 Conn. App. 657, 665, 64 A.3d 1268 (2013) ("[o]nce it is determined that multiple convictions and sentences challenged on double jeopardy grounds are not, in fact, for the same offense, as the state has defined the offense in question, the federal constitutional inquiry under the double jeopardy clause is at an end"), appeal dismissed, 315 Conn. 540, 109 A.3d 452 (2015). The fact that the statute prohibited punishment for the identified crimes

certainly overlapped with constitutional protections.

On appeal, the defendant in *Urbanowski* brought a claim under § 53a-64bb (b), alleging that his conviction for both assault in the second degree and strangulation in the second degree violated the protections provided in the statute. *State* v. *Urbanowski*, supra, 163 Conn. App. 383. The defendant had not clearly made a claim pursuant to § 53a-64bb (b) at trial. Id., 384. The Appellate Court explained that, "[i]nsofar as the defendant's claim is based on a violation of § 53a-64bb (b), the claim is not reviewable under *Golding*[5] because it alleges only a violation of statutory magnitude. . . . Insofar as the defendant's claim is based on a violation of the prohibition against double jeopardy afforded under the state and federal constitutions, however, the claim is reviewable under *Golding* because the record is adequate for review, and the claim is of constitutional magnitude." (Citation omitted; footnote added; footnote omitted.) Id., 386; see also, e.g., *State* v. *Graham S.*, 149 Conn. App. 334, 343, 87 A.3d 1182 (claim brought under § 53a-64bb (b) is statutory in nature), cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

I also find decisions of the Texas Court of Criminal Appeals consistent with my view and instructive in this case. In Texas, article 38.22 of the Texas Code of Criminal Procedure[6] prohibits the admission of statements made during custodial interrogations of individuals charged with a crime, unless such interrogations are recorded. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (a) (West Cum. Supp. 2017). In examining a claim that the warnings provided to the defendant did not comply with the requirements of the statute, the Texas Court of Criminal Appeals concluded that, despite the use of phrases in the statute such as "knowingly, intelligently, and voluntarily waives any rights set out in the warning"; Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (a) (2) (West Cum. Supp. 2017); see also Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (b) (West Cum. Supp. 2017); any claim under that statute was nonconstitutional. See *Nonn* v. *State*, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003) ("the erroneous admission of [a statement taken in violation of article 38.22] is appropriately characterized as a [nonconstitutional] error" (internal quotation marks omitted)); see also *Davidson* v. *State*, 25 S.W.3d 183, 186 (Tex. Crim. App. 2000) ("[article] 38.22 is located in the [Texas] Code of Criminal Procedure and deals with an evidentiary matter").

Furthermore, the Texas Court of Appeals recognized that the statutory protections provided in article 38.22 overlapped with constitutional principles. In *Foyt* v. *State*, 602 S.W.3d 23 (Tex. App. 2020), the Texas Court of Appeals explained: "The erroneous admission of a statement in violation of article 38.22 amounts to [nonconstitutional] error. . . . However, [the defendant] challenged the admission of his statement under *both*

the [f]ifth [a]mendment [to the United States constitution] and article 38.22. Therefore, we address harm under the standard for constitutional error." (Citation omitted; emphasis added.) Id., 44 n.7.

Similarly, I would conclude that, in the present case, the defendant's claim under § 54-1o is statutory in nature. Indeed, the legislature can create only statutory rights, even if those statutory rights overlap or track constitutional ones. Of course, nothing prevents a defendant from challenging the failure to record as a statutory matter *and* moving to suppress a statement that he believes was given involuntarily in violation of due process. However, considering a challenge pursuant only to the statute to be a challenge of constitutional magnitude fails, in my view, to account for the fundamental limitations on what the legislature can do through the enactment of a statute. Construing legislative enactments to create constitutional rights simply because the legislature incorporated a constitutional term or phrase into the statute is a slippery slope and potentially runs afoul of the separation of powers doctrine in that legislatures do not establish constitutional rights. Thus, notwithstanding the overlap here between the statutory requirements and due process voluntariness considerations, I conclude that a claim under § 54-1o is purely statutory and not of constitutional magnitude.

For the foregoing reasons, I concur in the result of the majority opinion.

[1] The majority relies on *State* v. *Piorkowski*, supra, 236 Conn. 409, and concludes that "[i]t is self-evident that [the admission of confessions made by criminal suspects during custodial interrogations] falls squarely within the purview of criminal lawyers, judges, and law enforcement. In choosing the word 'voluntar[y],' the legislature logically would have ascribed to it the meaning that its intended audience would assume—voluntary in the constitutional sense." *Piorkowski*, however, only concluded that the term "voluntary," when used in a statute, would have the same meaning that it has in the law of confessions, not that the use of that word creates a constitutional right through a statute.

[2] The term "voluntariness" is also understood, as deriving from *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), to involve "essentially whether, when the police interrogate a suspect who is in their custody, they properly administer the *Miranda* warnings to him and he waives the rights about which he was warned." *State* v. *Piorkowski*, supra, 236 Conn. 405. In the present case, the defendant does not challenge his advisement or waiver of his *Miranda* rights.

[3] The majority asserts that, "[u]nder the concurrence's interpretation of the statute, the state would have a lower, evidentiary burden with respect to proving voluntariness when the police fail to record a custodial interrogation in violation of the statute." Footnote 3 of the majority opinion. The majority misapprehends my interpretation of § 54-1o. I do not contend that the state would have any lesser burden than the preponderance of the evidence burden identified in the statute when attempting to demonstrate that an unrecorded confession was, nonetheless, "voluntarily given . . . ." General Statutes § 54-1o (h). Indeed, I have explained that the standard for voluntariness and the factors used in determining voluntariness under § 54-1o are the same as the standard for voluntariness and the factors used in determining voluntariness in the due process context. That the majority sees my position as creating a separate, lower, evidentiary burden of proof is perplexing.

The source of the majority's misapprehension of my position appears to lie in how a statutory claim should be treated on appeal. In my view, this

statutory claim should be reviewed, if it is preserved, under the standard of review applicable to statutory claims. Our appellate review does not hinge on whether the police record the custodial interrogation. Instead, the different standard of review on appeal hinges on whether a defendant chooses to make a statutory claim for a violation of § 54-1o, or to make a constitutional claim alleging that his confession was not voluntary. It is the defendant's choice whether to assert a statutory claim, a constitutional claim, or both. Critically, contrary to the majority's view of my position, the failure of the police to record the interrogation does not prohibit the defendant from bringing a constitutional claim alleging that his constitutional rights have been violated by the admission of an involuntary statement. That constitutional claim will be reviewed on appeal, even if it is not preserved, under the standard applicable to constitutional claims. Thus, to the extent that I advocate for two standards, it is simply to be consistent with our jurisprudence, in that purely statutory claims are reviewed under the appellate standard applicable to statutory claims, and constitutional claims are reviewed under the standard applicable to constitutional claims. The majority has mixed and matched standards by acknowledging that no constitutional right was created under this statute but concluding that, simply because the statute uses the word "voluntarily," this purely statutory claim should be reviewed on appeal as if it is now a claim of constitutional magnitude.

[4] Hereinafter, all references to § 53a-64bb (b) in this opinion are to the 2011 revision of the statute.

[5] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[6] Article 38.22 of the Texas Code of Criminal Procedure provides in relevant part: "Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

"(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

"(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

"(2) any statement he makes may be used as evidence against him in court;

"(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

"(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

"(5) he has the right to terminate the interview at any time; and

"(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

"Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

"(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

"(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

"(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

"(4) all voices on the recording are identified; and

"(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

\* \* \*

"(e) The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state, except that:

"(1) only voices that are material are identified; and

"(2) the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent. . . ."